UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARLENE M. ROBERTSON,

                      Plaintiff,

             v.                                   09-CV-0501-A

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                      Defendant.
_____

## **INTRODUCTION**

Plaintiff Darlene M. Robertson ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking reversal of the Commissioner of Social Security's ("the Commissioner") final decision finding that she was not entitled to Disability Insurance and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. The plaintiff claims she is disabled due to degenerative disc disease, stomach and bilateral foot pain, and diabetes mellitus. The Commissioner found that the plaintiff was not disabled because, although she was not capable of performing her past relevant work as a cashier, she could perform sedentary work that exists in significant numbers in the national economy. On November 6, 2009, the Commissioner moved for judgment on the pleadings, and on February 8, 2010, the plaintiff cross-moved for judgment on the pleadings. On March 8, 2010, the Commissioner filed a memorandum in response to the plaintiff's motion and in further support of his own

motion for judgment on the pleadings. For the reasons stated, the Commissioner's motion for judgment on the pleadings is granted and the petitioner's motion is denied.

## **BACKGROUND**

On October 21, 2004, the plaintiff applied for disability benefits and SSI and was denied. The plaintiff subsequently requested a hearing before an Administrative Law Judge (ALJ), which took place on November 13, 2007 before ALJ Robert T. Harvey. In a decision dated January 7, 2008, ALJ Harvey found that the plaintiff was not disabled because her residual functional capacity (RFC) was consistent with performing sedentary work that exists in significant numbers in the national economy. The Appeals Council denied the plaintiff's request for review on May 12, 2009, and this action followed.

The plaintiff claims she is disabled due to degenerative disc disease, stomach and bilateral foot pain, and diabetes mellitus. (Tr. 69, 86). The plaintiff was 47 years old at the time of the ALJ's decision and had a general equivalency diploma. (Tr. 92, 984). She stopped working as a cashier in April 2004, because her employer no longer needed her and she did not feel well enough to find another job. (Tr. 87). The plaintiff indicated her daily activities involved light housework, caring for her cat, and preparing quick meals. (Tr. 103-104). She was able to go outside a few times per week; she shopped, handled money, read, watched television and movies, played with her cat, and socialized a couple times per week, mostly by telephone. (Tr. 105-107). The plaintiff claimed her pain stopped or delayed her from finishing what she started. (Tr.

108). She further stated she could probably do a little office work, although she did not have computer skills. (Tr. 995).

The plaintiff testified she had abdominal pain still off and on resulting from the surgical removal of a fibroid via hysterectomy. (Tr. 985-86,1003-04). She stated her abdominal pain can be so severe at times that she doubles over in pain. (Tr. 1000). The plaintiff testified to having a "little bit" of back pain, which she last experienced six or seven weeks prior to the hearing. (Tr. 986). The plaintiff had several surgeries for hernia repair and resulting complications. (Tr. 987, 1004-05, 1007-08). She had hypertension and alleged blurred vision twice a week, along with daily numbness and/or tingling in her fingers and feet. (Tr. 987-89). She claimed to have anxiety stemming from her surgeries which caused sleep problems; however, she was not receiving treatment from a psychiatrist or psychologist for anxiety. (Tr. 989-90, 991, 1000, 1005). Additionally, the plaintiff had "unmanageable" diabetes mellitus. (Tr. 1002-03).

The plaintiff received primary care treatment from December 2001 through August 2003 at Kaleida Health for non-insulin dependent diabetes mellitus, and medication was prescribed to control her diabetes, hypertension, depression, and neuropathy. (Tr. 167-181, 371-417). On August 30, 2004, x-rays of the plaintiff's lumbrosacral spine showed L6-S1 degenerative discopathy and vertebral degenerative changes. (Tr. 211-17, 325). On November 1, 2004, a computerized axial tomography (CAT) scan of the plaintiff's abdomen showed a uterine fibroid. (Tr. 324). She had a hysterectomy on March 7, 2005, to remove the fibroid. (Tr. 291).

The plaintiff underwent an internal medicine consultative examination on December 30, 2004, by Dr. Fenwei Meng. Dr. Meng diagnosed diabetes mellitus,

3

uterine fibroid, mild back pain from the fibroid, and hypercholesteremia. (Tr. 258). Dr. Meng indicated her upper extremities had no limitation with dexterity and gross activity; her cervical spine had no restricted range of motion; the lumbar spine had mild limitation with bending, extension, twisting, and heavy lifting; and the lower extremities had no limitation with walking, standing, or going up/down stairs. (Tr. 258). Also on December 30, 2004, Dr. Thomas Ryan performed a consultative psychiatric evaluation on the plaintiff. Dr. Ryan diagnosed her with adjustment disorder with depressed mood, and alcohol abuse in remission for three years. (Tr. 263).

The plaintiff was admitted to Mercy Hospital from April 3 to 10, 2006, where surgeon Dr. Michael Pell performed open repair of an incisional hernia with mesh, a complication from the hysterectomy. (Tr. 364-66, 452-53). After surgery, Dr. Pell advised against strenuous activity or heavy lifting. (Tr. 455). The plaintiff was re-admitted to the hospital on May 2, 2006 for one month with chronic wound infections and fevers. In a report to Social Services completed June 22, 2006, Dr. Pell indicated that the plaintiff was totally disabled postoperatively, but estimated that she would be able to do usual work in four-to-six weeks depending on her rate of recovery, and that he did not believe her impairment would last for one year. (Tr. 776-77). On August 18, 2006, the plaintiff underwent surgery for a split thickness skin graft of an abdominal wound. (Tr. 355-56). Dr. Rasmusson, an associate of Dr. Pell, stated in a note on September 12, 2006 that the plaintiff continued to be disabled from work. (Tr. 767).

On February 23, 2007, Dr. Rasmusson completed a functional capacity questionnaire, and noted the plaintiff had anxiety, which contributed to the severity of her symptoms, but that her impairments were not reasonably consistent with the

4

symptoms and functional limitations assessed. (Tr. 784). He assessed the plaintiff could sit and stand/walk for less than two hours each, requiring a shifting of positions and unscheduled breaks on an hourly basis, lifting up to ten pounds occasionally, rarely climbing stairs, and never climbing ladders, twisting, stooping, crouching, or squatting. (Tr. 784-86). He further stated the plaintiff was incapable of even a low stress job and that she could be absent from work for more than four days a month. (Tr. 786).

On April 18, 2007, Dr. Rasmusson performed open hernia repair on the plaintiff. (Tr. 463-66). In a July 21, 2007 report to Social Services, Dr. Rasmusson assessed that the plaintiff could stand, walk, and climb stairs one-to-two hours each, sit for two-to-four hours, and perform no lifting or carrying. (Tr. 796). He stated the plaintiff was not capable of participating in work activities at that time and for an expected duration of six months. (Tr. 796). Dr. Rasmusson indicated that given the tenuous nature of her abdominal wall, the plaintiff would be precluded from work requiring heavy lifting or strenuous activity, but that sedentary work "would likely be acceptable." (Tr. 742).

Dr. Rasmusson completed a second functional capacity questionnaire on August 28, 2007, noting the plaintiff had undergone multiple surgeries of the abdomen but that her prognosis was good. He felt the plaintiff was capable of performing low stress jobs; lifting up to 10 pounds frequently; sitting at least six hours; standing /walking less than two hours, with standing up to 30 minutes, and walking for 10 minutes required every hour. (Tr. 496-97). Dr. Rasmusson further stated that the plaintiff would need to take breaks every one-to-two hours for 10-to-15 minutes; could occasionally climb stairs, but never ladders; rarely twist, stoop, or crouch/squat; and that she could be absent for more than four days per month. (Tr. 497-98).

5

Lastly, a residual functional capacity questionnaire by Dr. Rados was completed on September 26, 2007, and noted the plaintiff was capable of low stress work. (Tr. 964-68). Dr. Rados indicated that the plaintiff could sit and stand/walk about four hours each; could frequently lift up to 10 pounds; occasionally twist, stoop, crouch, squat, and climb ladders and stairs; would need to take unscheduled work breaks during an 8-hour day; would experience good days and bad days; and would likely be absent from work more than four days per month. (Tr. 966-67).

The ALJ found that the plaintiff has severe impairments: insulin dependent diabetes mellitus, hypertension, adjustment disorder with depressed mood, status-post debridement of abdominal wound, infected abdonminal mesh, and wound abscess. (Tr. 21). Despite these impairments, the ALJ determined that the plaintiff retained the RFC to perform sedentary work.[1] The ALJ found that the plaintiff was unable to perform any past relevant work, but given her age, education, work history, and RFC, she could perform other work existing in significant numbers in the national economy. (Tr. 25-26).

## DISCUSSION

**I.  Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits, and may set aside the Commissioner's decision only if it is based upon legal error or the findings of fact are not supported by substantial

---

[1] In accordance with SSR 96-9p, sedentary work is defined as lifting no more than 10 pounds at a time, and standing/walking for 2 hours of an 8-hour work day, while sitting for 6 hours of an 8-hour work day.

evidence. Substantial evidence is defined as "more than a mere scintilla," and evidence which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Social Security regulations set forth a five-step sequential evaluation in making disability determinations. 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner considers whether the plaintiff is currently engaged in substantial gainful activity. If she is not, the Commissioner next considers whether the plaintiff has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the plaintiff suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the plaintiff has an impairment which meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. If the plaintiff has such an impairment, the Commissioner will consider her disabled. Assuming the plaintiff does not have a listed impairment, the fourth inquiry is whether she has the RFC to perform her past work. Finally, if the plaintiff cannot perform her past work, the Commissioner must determine whether the plaintiff is capable of performing other work which exists in the national economy. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g). The plaintiff bears the burden of proving the first four elements and the Commissioner bears the burden on the fifth element. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

Here, the ALJ concluded that the plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 16, 2004, and she did suffer from severe impairments such as insulin dependent diabetes mellitus, hypertension, adjustment

disorder with depressed mood, status-post debridement of an abdominal wound, infected abdominal mesh, and wound abscess.² However, the plaintiff's impairments did not meet or equal any impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1.

Next, the ALJ concluded that the plaintiff retained the RFC to perform sedentary work, except work involving unprotected heights; heavy, moving, or dangerous machinery; and exposure to cold and dampness. (Tr. 22). The ALJ found she could lift or carry up to 10 pounds, sit for six hours, and stand or walk for two hours, in an eight-hour work day. (Tr. 22). The plaintiff could occasionally crawl; climb (except for climbing ropes, ladders, or scaffolds); push/pull with her arms; bend; twist; squat; stoop; and work in a job with a moderate amount of stress. (Tr. 22). Given the plaintiff's RFC, the ALJ found she was not able to perform any past relevant work. (Tr. 25). The ALJ then applied Medical-Vocational Rules 201.28 and 201.21, set forth at 20 C.F.R. Part 404, Subpart P, and found, based on the plaintiffs RFC, age, education, and work experience, she can do other work existing in significant numbers in the national economy.

## II.  The ALJ Properly Evaluated Medical Source Evidence to Reach His RFC Conclusion

The plaintiff argues the ALJ improperly evaluated the opinions of several treating sources in assessing the plaintiff's RFC for sedentary work; specifically, the statements of disability by Drs. Pell and Rasmusson, and the functional assessments by Drs.

---

² The ALJ concluded that although the plaintiff was diagnosed with a fibroid uterus, degenerative lumbar spine, and history of alcohol abuse currently in remission, these conditions did not significantly affect the plaintiff's functioning and were, therefore, not severe.

Rasmusson and Rados.  However, while Drs. Pell and Rasmusson indicated the plaintiff was functionally limited or even disabled postoperatively, her inability to work was considered only temporary as neither physician expected her condition to last for 12 months.  For example, after hernia repair surgery in April 2006, Dr. Pell simply advised against strenuous activity or heavy lifting.  (Tr. 455).  Additionally, in a June 2006 report, Dr. Pell stated that while the plaintiff was totally disabled postoperatively, he estimated she would be able to do usual work in four-to-six weeks, and did not believe her impairment would last for one year.  (Tr. 776-77).  Following the plaintiff's August 2006 skin graft surgery, Dr. Rasmusson stated she "continued to be disabled."  (Tr. 767).  Yet, after further surgery in April and May 2007, Dr. Rasmusson surmised the plaintiff would be off from work for six months, and that "sedentary work would likely be acceptable."  (Tr. 742, 771).  Moreover, the issue of whether an individual is disabled is reserved to the Commissioner, and a physician's statement that a claimant is disabled or unable to work cannot itself be determinative.  20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); SSR 96-5p; *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Furthermore, the ALJ did properly consider the totality of the medical evidence in the record, including Drs. Rasmusson and Rados's functional assessments, when determining the plaintiff's RFC.  Dr. Rasmusson's most recent functional capacity report was issued in August 2007, and was commensurate with sedentary work.  (Tr. 496-97).  Full range sedentary work requires an individual to be able to stand and walk for two hours, and sit for six hours, during an eight-hour work day, as well as lift no more than 10 pounds at a time.  SSR 96-9p.  Dr. Rasmusson opined the plaintiff could perform low stress jobs; lift up to 10 pounds frequently; sit at least six hours; stand or walk less than

9

two hours with standing up to 30 minutes and walking for 10 minutes every hour; and walk two-to-three blocks. (Tr. 496-97). Dr. Rados's opinion in September 2007 was consistent with Dr. Rasmusson's assessment that the plaintiff was capable of low stress, sedentary work. Dr. Rados indicated the plaintiff could sit and stand/walk about four hours each; frequently lift up to ten pounds; and occasionally twist, stoop, crouch, squat, and climb ladders and stairs. (Tr. 966-67). The ALJ rejected Drs. Rados and Rasmusson's prediction that the plaintiff could be absent more than four days per month to treat her surgical wound and because of pain, given the likelihood that her surgery site would heal with proper care. (Tr. 25, 498). Thus, the ALJ properly evaluated the functional assessments of Drs. Rados and Rasmusson in assessing the plaintiff's RFC for sedentary work.[3]

### III. The ALJ Was Not Obligated to Recontact Treating Sources

The plaintiff contends the ALJ had a duty to recontact Drs. Pell, Rasmusson, and Rados for more specific medical interpretations regarding their statements that the plaintiff was disabled or may be absent from work four or more days per month. However, the ALJ is only obligated to recontact these physicians if additional evidence was needed to reach a determination on whether the plaintiff was disabled.[4] 20 C.F.R.

---

[3] The plaintiff contends Dr. Rasmusson's finding in his February 2007 functional capacity report of a total inability to stoop precludes her from sedentary work. The Court finds this argument unpersuasive. Dr. Rasmusson's most recent functional capacity assessment in August 2007 found the plaintiff could rarely stoop, and the plaintiff's last functional assessment in September 2007 by Dr. Rados found that the plaintiff could stoop occasionally.

[4] Additional or clarifying information is sought when the report contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or it does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).

§§ 404.1512(e), 416.912(e). Here, the record was fully developed and contained comprehensive reports from all three doctors, which the ALJ used to determine the plaintiff was not disabled. As noted above, the issue of whether an individual is disabled is reserved to the Commissioner. *Snell*, 177 F.3d at 133. Furthermore, it was within the ALJ's discretion to reject the physician's estimates that the plaintiff may be absent from work more than four day per month, finding it too speculative given the likelihood that the plaintiff's wound site would heal with proper care. (Tr. 25). The Second Circuit has noted, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). Therefore, the ALJ was under no duty to recontact the plaintiff's physicians.

### IV.  The ALJ Properly Considered the Plaintiff's Subjective Complaints to Reach His RFC Conclusion

The plaintiff argues the Commissioner's finding that she can perform sedentary work is not based on substantial evidence because the ALJ failed to give weight to her testimony regarding her impairments and their impact on her ability to work. The plaintiff testified exertion causes her abdominal pain, so severe at times that she doubles over in pain and must lie down. (Tr. 1000). Additionally, the plaintiff argues her daily activities are not inconsistent with a finding that she is disabled, as they do not rise to a level comparable with full-time sustained employment. She testified light housework has to be done in pieces, her roommate helps her with most of the

household chores, and if she does more housework than normal, she suffers the next day. (Tr. 996, 1000).

Firstly, there is no authority supporting the contention that a plaintiff's activities of daily living need to rise to a level comparable with full-time sustained employment to be considered "not disabled." Secondly, the ALJ considered the plaintiff's subjective complaints and alleged functional limitations, and found that her impairments could reasonably be expected to produce her alleged symptoms. (Tr. 23-24). However, the ALJ found that the plaintiff's subjective complaints were not disabling to the extent she would be unable perform sedentary work. (Tr, 24-25). For example, the plaintiff's hypertension, anxiety, and neuropathy, were all controlled with medication, and her diabetes had never required emergency room treatment. The plaintiff testified she experienced the most pain in her abdomen, but the pain was "off and on." (Tr. 985, 999-1000). Likewise, she testified to only having a "little bit" of back pain, which she last experienced six or seven weeks prior to the hearing. (Tr. 986). The plaintiff also stated she could probably do a little office work. (Tr. 995). Thus, the ALJ reasonably found the plaintiff retained the RFC for sedentary work, given the plaintiff's subjective complaints and the objective medical evidence in the record.

### V.      The ALJ's Step Five Determination Was Proper

The plaintiff contends the Commissioner's burden at step five of the Social Security regulations five-step sequential evaluation was not met because the ALJ failed to obtain the testimony of a vocational expert. However, the ALJ found that the plaintiff's nonexertional limitations had little or no effect on the occupational base of

unskilled sedentary work she could perform and, therefore, the ALJ properly concluded the plaintiff was not disabled within the framework of Medical-Vocational Rules 201.28 and 201.21, set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2. (Tr. 25, 26). The Second Circuit recently held the ALJ's use of Medical-Vocational Guidelines is permissible where additional nonexertional limitations did not result in additional loss of capacity for unskilled work, as in this case. *Zabala v. Astrue*, 595 F.3d 402, (2d Cir. 2010). Therefore, a vocational expert was not needed, and the ALJ's application of the Medical-Vocational Rules as a framework to find the plaintiff not disabled was correct.

## **CONCLUSION**

For the reasons stated, the ALJ properly found that the plaintiff was not disabled because she retained the ability to perform sedentary work existing in significant numbers in the national economy. The Court grants the Commissioner's motion for judgment on the pleadings and denies plaintiff's motion for judgment on the pleadings.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: February 9, 2011